## Glossen v. Gehman, Appellant.

[Marked to be reported.]

*Master and servant—Master's liability—Negligence—Question for jury.*

Plaintiff was employed by defendant as foreman of a hay press. Power for cutting hay was furnished by an engine and boiler which were under the charge of an engineer. The testimony showed that plaintiff was in the habit of making the fire and working about the engine and boiler. There was evidence that the boiler was defective and dangerous, and that the defendant had knowledge of this. On a certain Saturday defendant gave directions, the plaintiff and the engineer being present, to have steam up on Monday at 7 o'clock. It was asserted by the plaintiff (and in this he was supported by the engineer) that in response, plaintiff spoke of the difficulty he had in making the fire; this was denied by defendant. On Monday morning, the fire having been started and such pressure of steam having been generated in the boiler as to cause it to blow off with considerable force, defendant asked the engineer whether he was ready to start, and he replied that he was not; defendant then said that he would go down and shovel coal on the fire to reduce the pressure, which he did. While he was so employed a boiler tube burst and he was severely scalded.

*Held*, that under these circumstances the court was correct in leaving it to the jury to find whether plaintiff was in the line of his duty when the accident occurred; whether the explosion was due to excessive pressure of steam or defective condition of the boiler; and whether the defendant had been guilty of negligence in furnishing, or maintaining, defective and dangerous machinery.

Argued Feb. 3, 1892. Appeal, No. 141, July T., 1891, by defendant, Milton Gehman, from judgment of C. P. Montgomery Co., Oct. T., 1890, No 176, on verdict for plaintiff, Nicholas Glossen. Before PAXSON, C. J., GREEN, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Trespass for personal injuries sustained in defendant's service.

On the trial before SWARTZ, P. J., the evidence was to the following effect: Plaintiff was employed by defendant as superintendent of a hay press. In connection with the work a boiler and engine were used, which were under the charge of an engineer. The boiler was known to be defective and not able to carry more than a limited pressure of steam. Plaintiff was in the habit of making the fire before the engineer arrived.

On a Saturday afternoon defendant gave directions to have steam up early on the following Monday morning, plaintiff and

the engineer both being present. Plaintiff testified that he thought the order was addressed to him, and that in reply he spoke of the difficulty he had in making the fire, owing to the defective condition of the boiler. In this he was supported by the engineer; but contradicted by defendant. On the Monday morning plaintiff made the fire. After the engineer had arrived and while he was greasing the engine such pressure of steam had been generated in the boiler as to cause it to blow off with considerable force, and defendant asked the engineer whether he was ready to start. He replied that he was not. Plaintiff then said that he would go down and shovel coal on the fire to reduce the pressure, which he did. While he was so employed a boiler tube burst and he was severely scalded.

Defendant's points, among others, were as follows :

" 6. The undisputed evidence being that Oberholtzer was the engineer and fireman, whose duty it was to take charge of the engine and boiler as soon as he came upon the ground, and that he arrived that morning at six o'clock and took charge of the engine and boiler, any act done in relation thereto after Oberholtzer arrived was voluntary upon the plaintiff's part and not in the line of his duty, and hence there can be no recovery. *Answer :* This is refused. You are to say whether the plaintiff was in the line of his duty when the accident occurred. [1]

" 10. Under all the facts in this case there is no evidence sufficient to submit to the jury from which they can find negligence upon the part of the defendant, or such negligence as constituted the proximate cause of the plaintiff's injury. *Answer.* This is refused. [2]

" 11. Under all the evidence in the case there must be a verdict in favor of the defendant. *Answer.* This is refused." [3]

Verdict for plaintiff for $475, and judgment thereon. Defendant appealed.

*Errors assigned* were, (1–3) answers to above points, quoting points and answers.

*N. H. Larzelere*, with him *M. M. Gibson*, for appellant.—If it was proper to submit this case to the jury we have no complaint as to the manner of submission. But the evidence clearly showed that plaintiff was injured while voluntarily performing work outside of his line of duty, and the legal conclusion

should have been announced by the court.   There was evidence which showed negligence upon the part of the defendant. Whether a defect existed in the boiler or not, such defect was not the proximate cause of the accident, which was due to the carelessness of the engineer in accumulating steam in excess of the use required.

If a defect in the boiler existed, according to his own showing plaintiff knew of it, continued to work without objection, and hence assumed the risks: Bemish v. Roberts, 28 W. N. C. 171; Pittsburgh etc. R. R. v. Sentmeyer, 92 Pa. 276; Breittermiller v. Brewing Co., 22 W. N. C. 33; Sykes v. Packer, 99 Pa. 465; Payne v. Reese, 100 Pa. 301; Goshorn v. Smith, 92 Pa. 435; R. R. Co. v. Bresmer, 97 Pa. 103; Marsden v. Haigh, 14 W. N. C. 526; Wannamaker v. Burke, 111 Pa. 429; Brossman v. R. R. Co., 113 Pa. 490.

That a recovery cannot be had for an injury, the result of one's own carelessness, is set at rest: Mulherrin v. R. R. Co., 81 Pa. 366; Lehigh Valley R. R. Co. v. Greiner, 18 W. N. C. 231.

*Charles Hunsicker*, for appellee, as to master's duty to supply safe appliances, cited Tissue v. B. & O. R. R. Co., 112 Pa. 91; Baker v. Allegheny Valley R. R. Co., 95 Pa. 211; Railroad Co. v. Agnew, 11 W. N. C. 394; Railroad Co. v. Keenan, 103 Pa. 125.

Where the servant informs his master of the danger or defect in the tools or machinery used, and the servant continues in the use in obedience to the master, the latter is liable in damages for a resulting accident: Patterson v. Pittsburgh, etc. R. Co., 76 Pa. 389; Rummell v. Dilworth, 111 Pa. 343; Tissue v. R. R., supra; Wannamaker v. Burke, supra; Railroad Co. v. Hughes, 119 Pa. 301; Railroad Co. v. Lyons, 119 Pa. 324.

The scope of a servant's duty is defined by what, with the knowledge and approval of the master, he actually performs, rather than the verbal designation of his position: Rummell v. Dilworth, supra.

OPINION BY MR. JUSTICE GREEN, March 21, 1892.

On the trial of this case it was proved by the testimony of H. A. Keller, a boiler-maker, who was sent to examine the

boiler after the accident, that the boiler was in a very defective condition. The witness said that he found that one of the tubes had exploded, and that the others were all eaten off at the top and bottom, and that it was of no use to repair the exploded tube, because the boiler needed an entire new set of tubes in order to run as a high-pressure boiler. He also said that the effect of this condition of the tubes was to render the boiler weak and liable to explode upon an overpressure of steam, and that it was unsafe to run it as a high-pressure boiler at all. This testimony was not at all contradicted by any witness. The plaintiff testified that the boiler had been leaking for some time before the accident, though it was not necessarily dangerous on that account, at least he did not know it was dangerous. The plaintiff, and Oberholtzer the engineer, both testified that the plaintiff told the defendant on Saturday before the accident, which occurred on the following Monday, that the boiler leaked, and that the defendant replied, " he knew it was leaking, but he could not fix it now." The defendant admitted, on cross-examination, that he knew the boiler leaked, that he often made the fire himself, and noticed that it was dripping. He said: "It would drip when we started the fire and go away after the pressure of steam would come on." He also said he bought the boiler as a second-hand boiler, that he had used it about a year and six months at the time of the accident, and that he never examined it, nor had it examined by an inspector.

It was therefore well established that the boiler was defective, that the defendant knew it was defective for some time before the accident, and that his attention was specially called to the defect only two days before the accident, when he was giving directions to Oberholtzer and the plaintiff to have steam up early on Monday morning following. The men also testified that he declined to fix it then, saying he had no time. According to the testimony of the plaintiff it had been leaking for seven or eight months, and another witness, George Henry, said it was leaking towards the last when he was working for the defendant, and that he had left the defendant's employment six or seven months before the accident. It seems that, notwithstanding this long-continued leakage, the boiler had not exploded during that time, and the plaintiff said he did not know it was dangerous on that account.

Under this state of the testimony it cannot be said, either that the defendant was ignorant of the defective condition of the boiler, or that the plaintiff was derelict, in not informing his employer of its condition. The defendant, knowing what was the matter, neglected to have the boiler repaired, or even examined, and certainly it was the duty of the court to submit to the jury the question whether the defendant, as master, was guilty of negligence in not providing suitable tools and implements, such as a reasonably prudent man should provide, for those in his employment.

The charge of the learned court below was most clear, comprehensive and in exact accordance with the perfectly established rules of law applicable in such cases. It was entirely impartial, and gave the defendant every chance, to which he was entitled, for a verdict. So unexceptionable was it in this respect, that not a single assignment of error is made to it, the only assignments being to answers to points. As to these we cannot possibly find any error in them.

It was strictly correct to say, in answer to the defendant's sixth point, that it was for the jury to determine whether the plaintiff was in the line of his duty when the accident occurred. There was abundant evidence to show that he was in the habit of making the fires at an early hour in the morning before the engineer arrived, and when the defendant requested that fire should be made early on the morning of the accident, the plaintiff was present, as well as Oberholtzer, and might well infer that he was intended as the person, or one of the persons, who was to perform this duty. It would be straining the testimony out of its natural import and meaning, to say that the plaintiff, as a matter of law, was out of the line of his duty when he made the fire and got up the steam, and added a few shovels of coal to the fire just before the accident. He was in the frequent habit of doing these things, and often it happened that there was no one else to do them.

As to the answer to the defendant's tenth point, it would have been clear error to affirm it. It required a binding instruction to the jury that there was no evidence sufficient to submit to the jury from which they could find negligence on the part of the defendant. We have already seen that there

was abundant evidence of this very character, not the least of which was the defendant's own admissions.

It is equally clear that it would have been grave error to take the whole case from the jury as was requested in the defendant's eleventh point.

The question whether the explosion was due to an excessive pressure of steam, or to the defective condition of the boiler, was, eminently, a pure question of fact, which necessarily had to be decided by the jury, and there was ample testimony to justify the verdict on that aspect of the case. The allegation that the accident was due solely to an excessive pressure of steam was not supported by the evidence, if the boiler was in good condition. The boiler-maker, Keller, testified that if the boiler was new it would be safe to run it at a hundred pounds pressure. The plaintiff could not know the condition of the tubes, and was not chargeable with negligence for not knowing it. But it was the clear duty of the defendant, warned as he was by the leaking of the tubes, and the notice given him by the plaintiff, to have the boiler properly examined, and the defective tubes removed or repaired. This he did not do, and the very least the court could do was to submit to the jury the question of his culpability in this respect. The authorities upon these subjects are so numerous and familiar that a reference to them is unnecessary.

Judgment affirmed.